# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47069-1-II |
| Respondent, | |
| v. | |
| JUSTIN MICHAEL HART, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Justin Hart appeals his conviction and sentence for bail jumping. Hart argues that (1) the bail jumping to-convict jury instruction omitted an essential element of the offense, (2) the State failed to present sufficient evidence to convict him of bail jumping, (3) the trial court violated his confrontation right by admitting certain evidence at trial, and (4) the sentencing court erred by ordering him to pay legal financial obligations (LFOs) and his costs of incarceration without first inquiring into his ability to pay those LFOs and incarceration costs. Hart has also filed a supplemental brief seeking waiver of appellate costs. We affirm Hart's conviction and accept the State's concessions regarding Hart's sentence. Therefore, we remand for the trial court to consider Hart's ability to pay discretionary LFO's. Additionally, we exercise our discretion to waive appellate costs.

FACTS

On February 6, 2014, the State charged Hart by amended information with one count of bail jumping, alleging that he failed to appear at a September 9, 2013 hearing.[1] At trial, three witnesses testified for the State. Angel Benneman testified that she was working as deputy clerk on July 22, 2013, and that Hart was present in the courtroom when his case was called. Benneman further testified that at the July 22 hearing, Hart was ordered to appear in court on September 9. Benneman stated that Hart's defense counsel prepared Hart's order to appear, which order was admitted into evidence without objection. Hart and the trial court judge had signed the order to appear, which stated, "IT IS ORDERED THAT: The Defendant shall personally appear for the following: . . . Pretrial 9/9/13 9 a.m." Exhibit 5.[2] Benneman testified that the order accurately reflected what took place in court on July 22.

During Benneman's testimony the trial court admitted, over Hart's hearsay objection, a video recording of the July 22 hearing. The video recording was played for the jury and showed that the trial court judge had told Hart that he was required to appear at a September 9 pretrial hearing. Benneman stated that the video accurately reflected what took place in court that day.

Staci Myklebust testified that she was working as deputy clerk on September 9, and that Hart did not appear for his hearing. Myklebust stated that she knew Hart did not appear at the

---

[1] The State originally charged Hart with several felonies but withdrew those charges before trial.

[2] The July 22 order to appear also informed Hart that his failure to appear at a scheduled hearing "may result in the issuance of a warrant for your arrest and may constitute the crime of bail jumping (RCW 9A.76.170), even if you've been released on your personal recognizance (without posting bail)." Exhibit 5 (capitalization omitted).

September 9 hearing because she had prepared the minute sheet for his September 9 pretrial hearing and had circled "did not" appear. Report of Proceedings (RP) at 37. Myklebust further testified that the trial court issued a bench warrant for Hart's arrest based on his failure to appear.

The final witness for the State, Cowlitz County Sheriff's Detective Rob Stumph, testified that he arrested Hart pursuant to the bench warrant. At the conclusion of the State's case, the trial court read a stipulation to the jury that stated that "on September 9, 2013 the Defendant was facing charges that he had committed crimes classified as Class B and Class C felonies in Cowlitz County Superior Court." RP at 43.

The trial court provided the jury with the following to-convict jury instruction:

> To convict the defendant of the crime of bail jumping, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about September 9, 2013, the defendant failed to appear before a court;
> (2) That the defendant was facing charges that he had committed crimes classified as class B and C felonies in Cowlitz County Superior Court; and
> (3) That the defendant had been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before that court; and
> (4) That all of these acts occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 58. The jury found Hart guilty of bail jumping.

At sentencing, the trial court did not inquire into Hart's ability to pay his costs of incarceration and LFOs, instead stating:

3

> We're kind of in this impossible position of predicting where they're going to be because generally the day somebody goes into custody nobody has the ability to pay. So I'll leave that [finding] there. It's obviously a long term issue.

RP at 78. The trial court thereafter imposed on Hart a total of $2,025 in LFOs and incarceration costs. Hart appeals his conviction and sentence.

## ANALYSIS

### I. TO-CONVICT JURY INSTRUCTION

Hart first contends that his conviction violated due process because the trial court's to-convict jury instruction relieved the State of its burden to prove each element of the offense beyond a reasonable doubt. Specifically, Hart contends that the bail jumping to-convict instruction relieved the State of its burden to prove the element that he had failed to appear at a court hearing "as required." Br. of Appellant at 5. We disagree.

We review the adequacy of a challenged to-convict jury instruction de novo. *State v. Mills*, 154 Wn.2d 1, 7, 109 P.3d 415 (2005). In general, a to-convict jury instruction must contain every essential element of the charged offense. *Mills*, 154 Wn.2d at 7.

To convict a defendant of bail jumping, the State must prove beyond a reasonable doubt that the defendant "'(1) was held for, charged with, or convicted of a particular crime; (2) was released by court order or admitted to bail with the requirement of a subsequent personal appearance; and, (3) knowingly failed to appear as required.'" *State v. Williams*, 162 Wn.2d 177, 183-84, 170 P.3d 30 (2007) (emphasis omitted) (quoting *State v. Pope*, 100 Wn. App. 624, 627, 999 P.2d 51 (2000)). Hart contends that the bail jumping to-convict instruction provided

here relieved the State of its burden to prove the element that he had failed to appear at a hearing "as required." Br. of Appellant at 5.

But the trial court's bail jumping to-convict instruction, which mirrors the to-convict instruction in 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* 120.41 at 517 (3d ed. 2008), required the State to prove beyond a reasonable doubt that Hart "had been released by court order or admitted to bail with knowledge *of the requirement* of a subsequent personal appearance before that court." CP at 58 (emphasis added). Accordingly, the trial court's to-convict instruction included the element of a *required* subsequent appearance and, thus, we reject Hart's challenge to the instruction.

## II. SUFFICIENCY OF THE EVIDENCE

Next, Hart contends that the State failed to present sufficient evidence to support his bail jumping conviction because it did not present any evidence that he (1) failed to appear at his September 9 hearing at "the specific required time," or (2) had been "'released by court order or admitted to bail.'" Br. of Appellant at 9, 11. Again, we disagree.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). We interpret all reasonable inferences in the State's favor. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). Direct and circumstantial evidence carry the same weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

A.      *Failure To Appear at Specified Time*

Relying on *State v. Coleman*, 155 Wn. App. 951, 231 P.3d 212 (2010), Hart contends that the State failed to present sufficient evidence to prove that he did not appear at his September 9 hearing "at the required specific time." Br. of Appellant at 9. Because *Coleman* is distinguishable from the present case, we disagree.

In *Coleman*, the State presented evidence that the defendant was ordered to appear at a 9:00 a.m. hearing. 155 Wn. App. at 963. The State also presented evidence in the form of an 8:30 a.m. clerk's minute entry, together with testimony explaining that the clerk's minute entry showed that the defendant did not appear at an 8:30 status hearing. 155 Wn. App. at 963. The *Coleman* court held that the State's evidence was insufficient to support the defendant's bail jumping conviction because "nothing before the jury established that Coleman was absent at the time specified on his notice." *Coleman*, 155 Wn. App. at 964.

Here, the State presented evidence that Hart was ordered to appear at a 9:00 a.m. hearing, but the record does not establish when the hearing was actually held. This absence of evidence regarding the precise time of Hart's hearing, however, does not undermine his bail jumping conviction. Contrary to Hart's assertion, *Coleman* does not require the State to present direct evidence that Hart was not in the court at precisely 9:00 a.m. Rather, the *Coleman* court concluded that the evidence was insufficient to prove bail jumping where it established only that the defendant was not present in the court at a time prior to the time he was required to appear.

6

Unlike in *Coleman*, where the evidence established that the defendant had failed to appear *before* the time he was ordered to do so, here the jury could reasonably infer that Hart failed to appear at the time specified in his order based on Myklebust's testimony that Hart did not appear for his September 9 hearing, together with the clerk's minute entry showing that Hart failed to appear at that hearing and that the prosecutor had requested a bench warrant based on Hart's absence from the hearing. Viewing the evidence and all reasonable inferences therefrom in a light most favorable to the State, we hold that sufficient evidence supported the jury finding that Hart knowingly failed to appear at his September 9 hearing.

B.      *Released by Court Order or Admitted to Bail*

Next, Hart asserts that the State failed to present sufficient evidence that he had been released by court order or admitted to bail. Again, we disagree.

Here, Hart stipulated that on September 9, 2013, he "was facing charges that [he] had committed crimes classified as class B and C felonies in Cowlitz County Superior Court." CP at 46. And the clerk's minutes from Hart's July 22 hearing states Hart had been booked and released from custody. Viewed in a light most favorable to the State, a reasonable jury could infer from this evidence that Hart had either been released from custody by court order or had been admitted to bail. Accordingly, we hold that the State presented sufficient evidence to support Hart's bail jumping conviction.

III. CONFRONTATION RIGHT

Next, Hart contends for the first time on appeal[3] that the trial court violated his

confrontation right by admitting as evidence (1) the order requiring him to appear at the

September 9 hearing, and (2) the video recording of his July 22 hearing. Hart's arguments fail.

We review alleged violations of the Sixth Amendment right to confrontation de novo.

*State v. Jasper*, 174 Wn.2d 96, 108, 271 P.3d 876 (2012). The Sixth Amendment guarantees a

criminal defendant's right to "be confronted with the witnesses against him." U.S. CONST.

amend. VI. The confrontation clause "bars the admission of 'testimonial' hearsay unless the

declarant is unavailable to testify and the defendant had a prior opportunity for cross-

examination." *State v. O'Cain*, 169 Wn. App. 228, 235, 279 P.3d 926 (2012); *see also State v.*

*Koslowski*, 166 Wn.2d 409, 417, 209 P.3d 479 (2009). Generally, a statement is testimonial if

made to establish or prove some fact or if a reasonable person in the declarant's position would

---

[3] We note that Division One of this court has held that a defendant must assert his or her confrontation right at trial to preserve the issue for appeal. *State v. O'Cain*, 169 Wn. App. 228, 234-48, 279 P.3d 926 (2012) (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009); *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011)); *see also State v. Fraser*, 170 Wn. App. 13, 282 P.3d 152 (2012). Notwithstanding the *O'Cain* court's sound reasoning for imposing such a requirement, our Supreme Court has held, albeit prior to *Melendez-Diaz* and *Bullcoming*, that a defendant may raise an alleged confrontation violation for the first time on appeal if the defendant meets the requirements of RAP 2.5(a)(3). *State v. Hieb*, 107 Wn.2d 97, 104-108, 727 P.2d 239 (1986). We, therefore, adhere to our Supreme Court's binding decision in *Hieb* until and unless our Supreme Court overrules it and holds that confrontation clause claims per se may not be raised for the first time on appeal. Accordingly, we analyze Hart's claims under RAP 2.5(a)(3).

anticipate that his or her statement would be used against the accused in investigating or prosecuting a crime. *Crawford v. Washington*, 541 U.S. 36, 51-52, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *State v. Shafer*, 156 Wn.2d 381, 389, 128 P.3d 87 (2006). The State bears the burden of establishing that the statements are nontestimonial. *O'Cain*, 169 Wn. App. at 235.

A.      *Order To Appear*

Hart first contends that the order requiring him to appear at the September 9 hearing violated his confrontation right because the order was prepared by stand-in defense counsel who did not testify at trial.[4] Because Hart did not object to the admission of this evidence at trial, and because admission of the order to appear did not implicate Hart's confrontation right, he cannot raise the issue for the first time on appeal under RAP 2.5(a)(3).

To raise an issue for the first time on appeal under RAP 2.5(a)(3), the appellant bears the burden of showing both that (1) the alleged error was "'truly of constitutional dimension'" and (2) the alleged error was "'manifest.'" *State v. Grimes*, 165 Wn. App. 172, 186, 267 P.3d 454 (2011) (quoting *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)). Because Hart fails to show that any error in admitting his order to appear infringed on his confrontation right, he cannot raise this issue for the first time on appeal under RAP 2.5(a)(3).

---

[4] We note that this argument misconstrues the nature of a court order. It is of no consequence that Hart's order to appear was drafted by his stand-in counsel. The final order and any statements contained therein were those of the trial court, not stand-in counsel.

The confrontation clause prohibits only admission of *testimonial* hearsay for which the defendant has not had an opportunity for cross-examination. *Koslowski*, 166 Wn.2d at 417. And we have held that public records, including court records, which are not created in anticipation of criminal prosecution are nontestimonial. *State v. Hubbard*, 169 Wn. App. 182, 185-187, 279 P.3d 521 (2012) (holding that confrontation right not violated by admission of certified copy of court record containing facts pertaining to defendant's sentencing in a prior matter) (citing *Jasper*, 174 Wn.2d at 112); *see also State v. Benefiel*, 131 Wn. App. 651, 656, 128 P.3d 1251 (2006) (Admission of judgment and sentence document does not violate confrontation clause because it is not testimonial.).

Here, the court's order to appear was not created for the purpose of establishing some fact or in anticipation of criminal prosecution. *Crawford*, 541 U.S. at 51-52. Rather, the court's order to appear was prepared to inform Hart of his obligation to appear in court at a certain date and time. Therefore, the court's order to appear was a nontestimonial public record falling within the recognized hearsay exception for such records. *Hubbard*, 169 Wn. App. at 187 (citing RCW 5.44.010, .040; *Benefiel*, 131 Wn. App. at 654-55). Hart cannot demonstrate a confrontation violation based on the admission of the court order to appear. Thus, he fails to demonstrate any error of constitutional magnitude allowing him to challenge admission of the order to appear for the first time on appeal. RAP 2.5(a)(3).

B.        *Video Recording of July 22 Hearing*

Next, Hart asserts that the trial court violated his confrontation right by admitting as evidence a video recording of his July 22 hearing, at which the pretrial hearing judge ordered him to appear at the September 9 hearing. Assuming without deciding that Hart's hearsay objection preserved his confrontation challenge on appeal under RAP 2.5(a)(3), we hold that the statements on the video did not constitute testimonial hearsay and, thus, the admission of the video did not violate Hart's right of confrontation.

Here, Hart asserts that the following statement by the pretrial hearing judge contained on the video recording of his July 22 hearing constituted testimonial hearsay:

> October 14th. Trial will be set for the week of October 14, readiness will be October 10 at 9 AM, pretrial will be September 9, at 9 AM. You are required to appear on those dates and times.

RP at 31. We disagree that this statement is testimonial hearsay. The pretrial hearing judge's recorded statements merely set forth the dates for trial and pretrial hearings and informed Hart of his requirement to appear at court on those dates. As with the court's order to appear, the judge's statements were not testimonial because they were not made for the purpose of establishing some fact or in anticipation of criminal prosecution. *Crawford*, 541 U.S. at 51-52.

Moreover, even if the pretrial hearing judge's statements constituted testimonial hearsay subject to the confrontation clause, any error in admitting the video recording would be harmless beyond a reasonable doubt. *See Jasper*, 174 Wn.2d at 117 (applying constitutional harmless error analysis to confrontation violation). Evidence of the pretrial hearing judge's statements on the admitted video recording was cumulative to the evidence presented in Hart's order to appear,

11

which order similarly established that he had knowledge of his requirement to appear in court on September 9. Because the pretrial hearing judge's statements merely repeated the information contained on Hart's order to appear, we are convinced beyond a reasonable doubt that any error in admitting the video recording did not contribute to the jury's verdict. *Jasper*, 174 Wn.2d at 117. Accordingly, we affirm Hart's bail jumping conviction.

## IV. SENTENCING

Finally, Hart contends that the sentencing court erred by ordering him to pay incarceration costs and LFOs without first inquiring into his ability to pay such costs and LFOs. The State concedes error and we accept the State's concession.

RCW 10.01.160(3) requires sentencing courts to "consider the defendant's current or future ability to pay . . . LFOs based on the particular facts of the defendant's case." *State v. Blazina*, 182 Wn.2d 827, 834, 344 P.3d 680 (2015). RCW 9.94A.760(2) similarly requires sentencing courts to "make a determination regarding the defendant's ability to pay" before imposing costs of incarceration. *State v. Arredondo*, 190 Wn. App. 512, 537-38, 360 P.3d 920 (2015), *review granted in part on other grounds*, 185 Wn.2d 1024 (2016). The State concedes that the sentencing court failed to make these individualized inquiries of Hart's ability to pay before imposing LFOs and incarceration costs. Accordingly, we remand for the trial court to make an individualized inquiry into Hart's ability to pay discretionary LFOs and incarceration costs.

V. APPELLATE COSTS

Hart has also filed a supplemental brief opposing appellate costs in light of *State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612 (2016), asserting that he does not have the ability to pay. In light of Hart's indigent status, and our presumption under RAP 15.2(f) that he remains indigent "throughout the review" unless the trial court finds that his financial condition has improved, we exercise our discretion to waive appellate costs in this matter. RCW 10.73.160(1).

We affirm Hart's conviction but remand for the trial court to make an individualized inquiry into Hart's ability to pay LFOs and incarceration costs.

_____
Worswick, P.J

We concur:

_____
Lee, J.

_____
Melnick, J.