# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48181-2-II |
| Respondent, | |
| v. | |
| LATRINA DESHELL MCNAIR, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Latrina Deshell McNair appeals her assault of a child in the third degree conviction. We conclude that sufficient evidence supported the admission of McNair's statements under the corpus delicti rule. We decline to decide McNair's Confrontation Clause challenge on the merits, but conclude that if a violation of her right to confrontation occurred, it was harmless error. We affirm.[1]

FACTS

I.    THE ASSAULT

Z.M. (age 7), O.M. (age 9), and their younger sister resided with their grandmother and legal guardian, Gloria McNair.[2]  Gloria is McNair's mother; the children's biological mother is

---

[1] McNair also argues that the trial court should have granted her motion to dismiss at the close of the State's case in chief. However, a defendant who presents her case in chief after unsuccessfully moving for a directed verdict may not appeal the court's denial of the directed verdict motion. *State v. Jackson*, 82 Wn. App. 594, 608, 918 P.2d 945 (1996). Because McNair presented evidence in her case-in-chief after the trial court denied her motion to dismiss, she has waived any alleged error relating to the trial court denying her motion and we do not review the error

[2] Because the defendant shares a last name with this person and we want to avoid confusion, we refer to her as Gloria. We intend no disrespect.

McNair's sister. McNair moved from California to help raise the children, and lived with Gloria and the children for some time. In 2014, McNair moved to Seattle to live with her husband and daughter. McNair helped Gloria with the children whenever Gloria called. McNair treated the children as her own and is the only "mother" the children have known. 2 Report of Proceedings (RP) at 229.

On July 29, 2014, Gloria's neighbor, Laura Harris, called Child Protective Services (CPS) after she observed bruises on Z.M.'s arm. Z.M informed Harris that her mother caused the injury. CPS investigator Bridget Spence arrived at the apartment and spoke with McNair. McNair acknowledged that the bruising was from her "whooping [Z.M.'s] ass" for "getting in trouble." 1 RP at 94. While talking with McNair, Spence observed bruising on Z.M.'s arms and a cut shaped like "a tip of a diamond." 1 RP at 95. When she talked with Spence in private, Z.M. told her that "mom" caused the injuries. 1 RP at 97.

Spence contacted the police and Tacoma Police Department Officers William Flippo and Jeffrey Smith were dispatched to the scene. Flippo spoke with Spence and Z.M. Flippo observed bruising and a "U shaped cut" on Z.M.'s arm. 1 RP at 111. Z.M. told Flippo that McNair caused the injuries. When Flippo asked McNair how Z.M.'s injuries occurred, McNair stated that Z.M. was being disciplined and the injuries may have been caused by Z.M. trying to get away when McNair was trying to spank her. She did not know how the U-shaped cut occurred. The officers did not arrest McNair, but took Z.M. into protective custody.

The State charged McNair with assault of a child in the third degree. The State alleged McNair assaulted Z.M. with criminal negligence and caused bodily harm "by means of a weapon or other instrument or thing likely to produce bodily harm." Clerk's Papers (CP) at 39. McNair pleaded not guilty.

II.    PRETRIAL

Pursuant to CrR 3.5, the trial court held a confession hearing to determine the admissibility of McNair's statements to Flippo and Smith. It held a second hearing to determine the admissibility of McNair's statements to Spence.

After hearing from the witnesses, McNair testified at the hearing regarding the statements made to Spence. McNair stated that she did not curse and denied ever telling Spence that she "whooped [Z.M.'s] ass." 1 RP at 85. The trial court ruled the statements were admissible.

The trial court also addressed the State's motion in limine to admit Z.M.'s out-of-court statements identifying McNair as the perpetrator of the crime. The motion specified that the State expected Z.M. to testify that she disclosed to several individuals that McNair physically abused her. Those individuals were also expected to testify that Z.M. disclosed McNair's identity to them. The State argued that ER 801(d)(1) permitted these identification statements. The court reserved ruling on the motion.

III.    TRIAL

The State called Z.M. to testify, but she did not offer substantial testimony. Z.M. testified about her age and birthday, and that she used to live in Tacoma with her grandmother. When asked whether she used to call someone her "mommy," she did not respond. 1 RP at 49-50. After a short recess, the State informed the trial court that if Z.M. became overcome with emotion, it would not recall her. When examination resumed, Z.M. testified that she used to call someone her "mommy," but would not say who her mother was. 1 RP at 54-55. The State excused Z.M. subject to recall. The trial court provided McNair an opportunity to question Z.M., but McNair declined.

3

At trial, several witnesses testified that they saw bruising and cuts on Z.M.'s arm. Witnesses included Harris, Spence, Flippo, Smith, a child forensic interviewer, and a pediatric nurse. Except for the pediatric nurse, each of them testified that Z.M. identified McNair as the person who caused the injuries. McNair did not object to any of the identification testimony.

The pediatric nurse testified that the injuries "seemed consistent with what [Z.M.] was saying about getting a whooping" and the areas with bruising were unusual areas to bruise accidentally. 2 RP at 196. Bumping into a wall or door would not have caused Z.M.'s bruises. The pediatric nurse took pictures of Z.M.'s injuries and the jury reviewed them.

The State also presented evidence that McNair acknowledged causing Z.M.'s injuries. The trial court admitted McNair's admission to Spence that she caused the bruises and her statements to Flippo that she had been disciplining Z.M. by spanking her with a belt.

O.M. testified that two days before CPS and the police came to the apartment, Z.M. got in trouble. McNair called Z.M. into the living room to get a spanking and McNair used a belt. He did not see McNair spank Z.M., but knew she got a spanking with a belt because he "heard her screaming and crying." 2 RP at 149. He had seen Z.M. before the spanking. After the spanking, O.M. saw bruise-like marks "[a]ll over [Z.M.'s] body." 2 RP at 149. Z.M. was running around the living room because she did not want to get a spanking and was "really afraid." 2 RP at 150.

After the State rested its case, McNair moved for a directed verdict, arguing that the State did not meet its burden of proof regarding bodily harm and use of a weapon. The trial court denied the motion, finding that sufficient evidence existed for the charge to go to the jury.

McNair called two witness, Gloria and Japheth Williams, McNair's husband. They testified that McNair spanked the children using a belt in the past and that Z.M. had tried to run from spankings before. Neither provided evidence that McNair caused Z.M.'s bruising.

McNair also testified. She said that she used different methods of discipline and spanking only occurred in "extreme situations" after warning the children several times. 2 RP at 291. She explained that there was a specific protocol in which she administered a spanking. Extreme situations included stealing, lying to hurt another, or actually hurting another. Other disciplinary measures McNair used included grounding or taking toys or activities away.

On the day of the incident, McNair warned Z.M. several times about her bad behavior. Z.M. "[a]ssume[d] the position" to receive the spanking; however, Z.M. moved off of the wall before McNair hit her. 2 RP at 304. Z.M. started looking around, breathing heavily and panicked. Z.M. said, "Look, I hear you. I hear you. Don't say that." 2 RP at 306. She began crying and scraped her nails down her neck. She ran and fell onto the bed rails that had been disassembled in preparation for a move. Z.M. tried to hurdle a large coffee table, but hit it and fell. She attempted to crawl through cutouts in the table and repeatedly slammed into the front door and ran into the walls. Z.M. was breathing hard, red-faced, and "slobbering." 2 RP at 308. McNair calmed Z.M. down and held her. She acknowledged that Z.M. may have experienced a "serious break with reality." 3 RP at 321. She did not call authorities because she "de-escalated the situation." 3 RP at 321. McNair asked Gloria to call her later to make sure Z.M. was okay. She did not hit or spank Z.M. on July 27 or 28.

On the day the police came to Gloria's apartment, McNair was at the apartment and saw bruises on Z.M.'s arms earlier during the day. Z.M. did not tell her how she got the bruises, but McNair thought the bruises either came from Z.M. running around the house from the incident two days prior or from someone else. McNair called Z.M.'s primary care physician. She also talked to the mother of the child that she thought may have hurt Z.M. The neighbor told McNair that she did not know what happened, but "kids play" and "[her daughter] is sorry." 3 RP at 330.

When she spoke with Flippo, she asked that the police and CPS look into it, but no one did anything.

The jury found McNair guilty of assault of a child in the third degree. The trial court sentenced McNair to 45 days of confinement.

McNair appeals.

ANALYSIS

I.    CORPUS DELICTI

McNair argues that her statements about striking Z.M. should not have been admitted because they violated the corpus delicti rule. She then argues that because the statements should not have been admitted, insufficient evidence existed to sustain her conviction. We disagree and conclude that the State proved the corpus delicti independently of McNair's statements.

"Corpus delicti means 'body of the crime.'" *State v. Page*, 147 Wn. App. 849, 855, 199 P.3d 437 (2008) (quoting *State v. Brockob*, 159 Wn.2d 311, 327, 150 P.3d 59 (2006)). Under the corpus delicti rule, confessions or admissions of a person charged with a crime, standing alone, are insufficient to prove the corpus delicti and must be corroborated by other independent evidence. *State v. Aten*, 130 Wn.2d 640, 655-56, 927 P.2d 210 (1996). "The purpose of the corpus delicti rule is to prevent defendants from being unjustly convicted based on confessions alone." *State v. Dow*, 168 Wn.2d 243, 249, 227 P.3d 1278 (2010).

The independent evidence required under the rule need not be of such a character that would establish the corpus delicti beyond a reasonable doubt or even by a preponderance of the proof. *Aten*, 130 Wn.2d at 656. It is sufficient if it supports a logical and reasonable inference of the facts sought to be proved. *Aten*, 130 Wn.2d at 656. Moreover, the independent evidence "'must be consistent with guilt and inconsistent with a[ ] hypothesis of innocence.'" *Brockob*, 159

6

Wn.2d at 329 (quoting *Aten*, 130 Wn.2d at 660). In determining whether there is sufficient evidence of the corpus delicti, independent of the defendant's statements, we assume the truth of the State's evidence and all reasonable inferences from it in a light most favorable to the State. *Aten*, 130 Wn.2d at 658.

Sufficient independent evidence supported the fact that the crime of assault occurred. Multiple witnesses observed the deep scratch on Z.M.'s arm and the numerous bruises on her neck, arms, legs, and chest. The bruised areas were unusual areas to bruise accidentally and Z.M.'s injuries were consistent with a spanking. Z.M. received spankings before and O.M. heard Z.M. get a spanking with a belt from McNair on the day in question. Further, Z.M. told the nurse that she had received a "whooping," the same term used McNair used when describing to Spence what occurred. 2 RP at 194.

The independent evidence was consistent with McNair's guilt, inconsistent with a hypothesis of innocence, and supported a logical inference that an assault occurred. Based on the independent evidence, and viewing it in a light most favorable to the State, sufficient evidence independent of McNair's statements, proved the corpus delicti. Therefore, we conclude that the trial court properly admitted McNair's statements.[3]

II.    RIGHT TO CONFRONTATION

McNair argues that the trial court erred when it admitted Z.M.'s identification statements because Z.M. was unable to testify and was not subject to cross-examination.[4] As a threshold

---

[3] McNair challenges the sufficiency of the evidence if her statements were not admissible. Because they were admissible, we conclude that, when viewing the evidence in the light most favorable to the State, a reasonable jury could have found all of the elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

[4] Neither party cites to ER 801(d)(1)(iii) for authority and we do not rely on it in our analysis.

issue, the State argues that McNair failed to raise her confrontation clause objection at trial, thereby losing her claim. McNair does not contend that she failed to raise the issue below, but argues that Washington State law is not settled on this point. We need not decide whether or not a violation of McNair's right to confrontation occurred because, even if it did, any error was harmless beyond a reasonable doubt.

We review alleged violations of the Sixth Amendment right to confrontation de novo. *State v. Jasper*, 174 Wn.2d 96, 108, 271 P.3d 876 (2012). The Sixth Amendment confrontation clause guarantees a criminal defendant's right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The confrontation clause bars the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. *State v. Koslowski*, 166 Wn.2d 409, 417, 209 P.3d 479 (2009).

Hearsay is inadmissible unless it comes within an exemption or exception established by statute or common law. *State v. Kirkpatrick*, 160 Wn.2d 873, 881, 161 P.3d 990 (2007). However, an applicable hearsay exception is not dispositive of admissibility at trial. *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford*, 541 U.S. at 68-69.

Confrontation clause errors are subject to harmless error analysis. *Jasper*, 174 Wn.2d at 117. Under this analysis, the State must show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Jasper*, 174 Wn.2d at 117 (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). If a defendant's confrontation right is violated and the error is not harmless, the appropriate remedy is reversal of the affected convictions and remand for a new trial. *Jasper*, 174 Wn.2d at 101.

An issue exists as to whether or not a confrontation violation can be raised for the first time on appeal. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313-14 n.3, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009); *State v. Hieb*, 107 Wn.2d 97, 104-08, 727 P.2d 239 (1986); *State v. O'Cain*, 169 Wn. App. 228, 234-48, 279 P.3d 926 (2012); *State v. Hart*, 195 Wn. App. 449, 458 n.3, 381 P.3d 142 (2016). However, as discussed above, we conclude that McNair's statements admitting to the assault were properly admitted at trial. Therefore, we need not decide if McNair's right to confrontation was violated because, even if it was, and even if she could raise the issue for the first time on appeal, any error was harmless beyond a reasonable doubt.

Here, McNair admitted to causing Z.M.'s injuries. She told Spence that she caused the injuries because Z.M. got a "whooping" from "getting in trouble." 1 RP at 94. McNair also told Flippo that she was disciplining Z.M. "in the normal way" and spanks Z.M.'s bottom with a belt. 1 RP at 112. When asked about the injuries to Z.M.'s arms, McNair stated they occurred when Z.M. was trying to get away from her when she was spanking her. O.M.'s testimony also proved circumstantially that McNair caused Z.M.'s injuries.

Even without Z.M.'s statements of identification that were admitted through some witnesses, ample evidence supported the jury's finding that McNair struck Z.M. and caused her injuries. We conclude that the State has shown beyond a reasonable doubt that if it was error to admit Z.M.'s statements identifying McNair as the person who caused Z.M.'s injuries, it did not contribute to the verdict. We, therefore, conclude that the error was harmless beyond a reasonable doubt.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, J.

Bjorgen, C.J.