# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52151-2-II |
| Respondent, | |
| v. | |
| ALLEN LEE HUMPHRIES, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Allen Humphries appeals his convictions and sentence for three counts of bail jumping. Humphries argues that (1) the State presented insufficient evidence to support the bail jumping convictions, (2) the State committed prosecutorial misconduct during rebuttal in closing argument, (3) defense counsel rendered ineffective assistance by failing to object to inadmissible evidence, (4) the trial court violated his due process rights by erroneously instructing the jury, and (5) the trial court erred by ordering him to pay a DNA (deoxyribonucleic acid) collection fee. We affirm Humphries's convictions, but we remand to the sentencing court to determine whether the State has previously collected a DNA sample from Humphries.

FACTS

The State charged Humphries with possession of a controlled substance—heroin. While the case was pending, Humphries failed to appear in court for three required court dates on September 26, October 3, and February 13. The State filed an amended information adding three charges of bail jumping.

At trial, the State presented Humphries's pretrial release order, several bench warrants for failure to appear, and orders setting Humphries's court appearances. Each order was signed by "Allen Humphries."

Humphries testified in his defense. He testified that he had over 45 court appearances after his arrest for possession of a controlled substance. When presented with the order setting his arraignment for October 3, Humphries acknowledged his signature on the order. Humphries explained that he thought the "10/3/16" on the order actually read "10/31/16" and that his vision is impaired. Humphries also testified that he suffered from injuries to his feet in February, which caused him to miss the required omnibus hearing on February 13. Humphries explained that he made it to the court "as soon as [he] possibly could." Verbatim Report of Proceedings (VRP) at 237. When presented with the order for his pretrial release, requiring him to appear on September 26, Humphries stated that he recognized the order, and he recalled that on September 26 he mistakenly went to municipal court.

The trial court instructed the jury that in order to convict Humphries of bail jumping as charged in each count, the jury must find each of the following elements proved beyond a reasonable doubt:

(1)     That on or about [date], the defendant failed to appear before a court;

(2)     That the defendant was charged with Unlawful Possession of a Controlled Substance, a Class C Felony;

(3)     That the defendant had been released by court order with knowledge of the requirement of a subsequent personal appearance before that court; and

(4)     That any of these acts occurred in the State of Washington.

Clerk's Papers (CP) at 76-78.

No. 52151-2-II

In his closing argument, Humphries acknowledged that he was aware of the required court appearances but argued that uncontrollable circumstances prevented him from coming to court and he appeared as soon as the circumstances resolved. Humphries analogized reasonable doubt to the scales of justice:

> And you've seen the . . . lady holding the scales, right? And that's the way you can look at it, and it's a balancing act. Now in that balancing act, my client comes in—in a civil matter there's the preponderance of the evidence. And so it—you're on even keel. Two parties are on even keel and preponderance just barely tips the scale.
>
> Now in a criminal matter the burden's upon the State to prove my client beyond a reasonable doubt—and my client comes into this courtroom presumed innocent. So the scale is like this. My client is innocent. He's presumed innocent coming into this courtroom. . . .
>
> And then the burden's upon the State to prove beyond a reasonable doubt that he's guilty of these crimes. . . . It's not up to us to present all the evidence. It's up to the State to present that evidence. And it's up to you to determine that—look at the credibility of all the witnesses and weigh that. Now have they brought it all the way down here? They have to bring it almost all the way down and make that scale tip. Not just tip, tip, and to find my client guilty. And they have not done that.

VRP at 475-76.

In rebuttal, the State responded to Humphries's analogy:

> [Humphries] says well, you know, preponderance of the evidence is when you hold your—the scale straight out and it's like a little bit of a tilt. And reasonable doubt is all the way down. Now that sounds like something that the defense would want, obviously. 'Cause they want to set the bar for you beyond a reasonable doubt like this. Of course they do. They're the defense. That's what they want.
>
> But is that really true? . . . [B]eyond a reasonable doubt means that you're—you're satisfied beyond a reasonable for—you know, then there are no doubts for which a reason exists, period. You believe to a moral certainty. Okay, fine. That's what beyond a reasonable doubt is. A reason—beyond a reason—a reasonable doubt isn't scales all the way down. No.

VRP at 485.

3

The jury hung on the possession charge and found Humphries guilty of all three bail jumping charges.

The trial court sentenced Humphries to a total of 38 months confinement and imposed legal financial obligations including a $500 victim assessment and $100 DNA collection fee.

Humphries appeals his convictions and sentence.

ANALYSIS

I. SUFFICIENT EVIDENCE

Humphries argues that the State presented insufficient evidence to convict him of three counts of bail jumping. We disagree.

We review challenges to the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). The State has the burden of proving all of the elements of a crime beyond a reasonable doubt. *Rich*, 184 Wn.2d at 903. When reviewing a claim of insufficient evidence, we ask whether a rational trier of fact could find that all of the crime's essential elements were proven beyond a reasonable doubt. *Rich*, 184 Wn.2d at 903. We view all the evidence in the light most favorable to the State. *Rich*, 184 Wn.2d at 903. And the defendant admits the truth of the State's evidence and all reasonable inferences that arise therefrom. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265-66, 401 P.3d 19 (2017). Both circumstantial and direct evidence are considered equally reliable. *Cardenas-Flores*, 189 Wn.2d at 266.

The essential elements of bail jumping are that the defendant "'(1) was held for, charged with, or convicted of a particular crime; (2) was released by court order or admitted to bail with the requirement of a subsequent personal appearance; and, (3) knowingly failed to appear as

4

required.'" *State v. Williams*, 162 Wn.2d 177, 183-84, 170 P.3d 30 (2007) (emphasis omitted) (quoting *State v. Pope*, 100 Wn. App. 624, 627, 999 P.2d 51 (2000)). In order to meet the knowledge requirement of bail jumping, the State must prove that a defendant has been given notice to appear at his required court dates. *State v. Cardwell*, 155 Wn. App. 41, 47, 226 P.3d 243 (2010), *modified on remand on other grounds*, 166 Wn. App. 1011 (2012).

Humphries challenges only the knowledge element of bail jumping. The State presented orders setting Humphries's court dates, signed by "Allen Humphries," as evidence that Humphries received notice to appear. Ex. 3, 5, 7, and 8. Humphries argues that these orders were insufficient to prove his knowledge because "there was no evidence that the signatures actually belonged to [him]." Br. of Appellant at 11. But Humphries's argument is not supported by the record. Humphries testified that he had notice of the required court dates and affirmatively identified his signature on the order setting the October 3 arraignment hearing.

Humphries's argument on appeal is also inconsistent with his defense theory and testimony at trial. There, Humphries did not argue that he lacked knowledge of his requirement to appear. Rather, he put on the affirmative defense that uncontrollable circumstances prevented Humphries from appearing as required. Notably, Humphries essentially conceded the knowledge element of bail jumping during closing argument when his trial counsel argued, "Was he aware of a subsequent personal appearance that was required by law, as in the jury instructions? Yes, he was." VRP at 482.

Viewing the evidence, and all reasonable inferences therefrom, in the light most favorable to the State, as we must, we hold that sufficient evidence supports Humphries's bail jumping convictions.

## II. PROSECUTORIAL MISCONDUCT

Humphries argues that the State committed prosecutorial misconduct during closing argument by minimizing the State's burden of proof and undermining the presumption of innocence. We disagree.

To establish prosecutorial misconduct, a defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). If a defendant shows that the prosecutor's conduct was improper, we must determine whether the improper conduct prejudiced the defendant. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). A prosecutor's improper conduct results in prejudice when "'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.'" *Thorgerson*, 172 Wn.2d at 443 (alteration in original) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

Where, as here, a defendant fails to object to alleged prosecutorial misconduct, the defendant is deemed to have waived any error unless he shows that the misconduct was so flagrant and ill-intentioned that an instruction from the trial court could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61. To meet this heightened standard, the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455).

We review allegedly improper arguments of the prosecutor in the context of the total argument, the evidence addressed during argument, the issues in the case, and the trial court's

instructions.  *State v. Russell*, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994).  "Arguments by the prosecution that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct."  *State v. Lindsay*, 180 Wn.2d 423, 434, 326 P.3d 125 (2014).  A prosecutor may, however, argue that evidence does not support a defense theory and present a fair response to defense counsel's arguments.  *Russell*, 125 Wn.2d at 87.  And even clearly improper remarks do not require reversal "if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective."  *Russell*, 125 Wn.2d at 86.

Humphries argues that the State mischaracterized its burden of proof, undermined the presumption of Humphries's innocence, and impugned defense counsel when the State responded to defense counsel's "scales of justice" analogy.  Br. of Appellant at 14.  Humphries argued to the jury that the scales had to be brought "all the way down," insinuating that the jury must reach its decision with 100 percent accuracy.  VRP at 485.  The State was entitled to present a fair response to defense counsel's arguments.  *Russell*, 125 Wn.2d at 87.  Moreover, any possible impropriety was not so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice.  Moreover, the trial court properly instructed the jury on the State's burden of proof, and we presume that the jury followed the trial court's instructions.  *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007).

Accordingly, we hold that Humphries's prosecutorial misconduct claim is waived.

III. INEFFECTIVE ASSISTANCE OF COUNSEL

Humphries argues that he received ineffective assistance of counsel because his trial counsel failed to object to the State's evidence of orders setting Humphries's court dates on the grounds that Humphries's signatures on the orders were unauthenticated and that the orders were inadmissible hearsay. Because Humphries cannot show that his trial counsel's decision not to object was not a legitimate strategic or tactical decision we disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To demonstrate that he received ineffective assistance of counsel, Humphries must show both that defense counsel's performance was deficient and that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). Prejudice ensues if the result of the proceeding would have been different had defense counsel not performed deficiently. *Estes*, 188 Wn.2d at 458. Because both prongs of the ineffective assistance of counsel test must be met, the failure to demonstrate either prong will end our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

We strongly presume that defense counsel's performance was not deficient. *Emery*, 174 Wn.2d at 755. To overcome this presumption, Humphries must show "'the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.'" *Emery*, 174 Wn.2d at 755 (quoting *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). And our review is limited to evidence within the record. *Linville*, 191 Wn.2d at 525.

Humphries cannot show that his trial counsel was ineffective for failing to object to the State's evidence because counsel had a tactical reason for declining to object. Humphries testified that he signed the orders and built his defense theory upon the premise that extraordinary circumstances prevented him from appearing in court as required. Humphries trial counsel extensively questioned him about the number of court appearances he made in relation to the underlying incident as well as the medical problems that allegedly impacted Humphries's appearance on the three dates in question. Humphries argued that each time he missed a court appearance he contacted the court and came in voluntarily as soon as he could. Objecting to the orders would have undermined Humphries's credibility and defense theory.

Accordingly, we hold that Humphries cannot show on the record that his trial counsel was ineffective, thus, his ineffective assistance of counsel claim fails.

IV. TO-CONVICT INSTRUCTION

For the first time on appeal, Humphries argues that the to-convict instruction for bail jumping erroneously relieved the State of its burden to prove that he failed to appear in court "as required" in violation of his right to due process. Br. of Appellant at 23. We decline to address this argument because, under this court's decision in *State v. Hart*,[1] the challenge to the to-convict instruction does not involve a manifest constitutional error under RAP 2.5(a)(3).

Humphries did not object to the to-convict instruction at trial. Generally, we will not consider an issue raised for the first time on appeal unless the party claiming the error can show that an exception applies. RAP 2.5(a); *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84

---

[1] 195 Wn. App. 449, 460, 381 P.3d 142 (2016), *review denied*, 187 Wn.2d 1011 (2017), *abrogated on other grounds by State v. Burns*, 193 Wn.2d 190, 438 P.3d 1183 (2019).

(2011). One exception is for a "manifest error affecting a constitutional right." RAP 2.5(a)(3). In order to raise an issue for the first time on appeal under RAP 2.5(a)(3), the appellant must demonstrate that the error is truly of a constitutional dimension and that the error is manifest. *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). "Manifest" in RAP 2.5(a)(3) requires a showing of actual prejudice. *State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591, 594 (2001). To determine whether this showing is made, we preview the merits of the claimed error to determine whether the argument is likely to succeed. *Walsh*, 143 Wn.2d at 8.

RCW 9A.76.170(1) states that a person is guilty of bail jumping if the person is released by court order "with knowledge of the requirement of a subsequent personal appearance before any court" and "fails to appear . . . as required." Here, the bail jumping to-convict instruction was modeled on 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* 120.41 (4th ed. 2016). Two of the instruction's elements were that Humphries "failed to appear before a court" and that he "had been released by court order with knowledge of the requirement of a subsequent personal appearance before that court." CP at 77. The instruction did not provide that the State had the burden to prove that Humphries failed to appear in court "as required," which is the language used in RCW 9A.76.170(1).

In *Hart*, we addressed an argument identical to the one Humphries makes here: that the to-convict instruction relieved the State of its burden to prove that he had failed to appear at a court hearing "as required." *Hart*, 195 Wn. App. at 455. The trial court's to-convict instruction (identical to the instruction given here) did not include "as required" after "the defendant failed to appear before a court." *Hart*, 195 Wn. App. at 454. But the instruction required the State to prove beyond a reasonable doubt that the defendant "had been released by court order or

10

admitted to bail with knowledge *of the requirement* of a subsequent personal appearance before that court." *Hart*, 195 Wn. App. at 456. We held that the instruction did not violate the defendant's due process rights because the instruction included the element of a required subsequent appearance. *Hart*, 195 Wn. App. at 456.

Humphries contends that *Hart* was wrongly decided because its reasoning conflates two different elements of bail jumping. But we agree with the analysis in *Hart*.

Accordingly, Humphries has failed to show that the challenged to-convict instruction was a manifest constitutional error, and we decline to review Humphries's challenge.

## V. LEGAL FINANCIAL OBLIGATIONS

In a supplemental brief, Humphries argues that the trial court erred by ordering him to pay a DNA (deoxyribonucleic acid) collection fee. The State argues that the record is insufficient to prove that Humphries's DNA had previously been collected. Because the State bears the burden of showing that the State has not collected a DNA sample from a defendant with a prior Washington felony conviction, we remand for the trial court to determine whether the State has previously collected a DNA sample from Humphries.

Recent legislation prohibits trial courts from imposing on indigent defendants the DNA collection fee if the offender's DNA has already been collected as the result of a prior conviction. RCW 43.43.7541. The recent legislation applies prospectively to defendants like Humphries, whose cases were pending appellate review and were not yet final when the legislation was enacted. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

The trial court found Humphries indigent, and Humphries has several felony convictions in his criminal history. RCW 43.43.7541 requires the collection of a DNA sample from every

adult or juvenile convicted of a felony. But the record on appeal is silent as to whether the State previously collected Humphries's DNA. If such collection occurred, the trial court's imposition of the DNA collection fee was improper.

This court recently held that when a defendant has a prior Washington felony conviction, the State must show that the defendant's DNA has not previously been collected. *State v. Houck*, 9 Wn. App. 2d 636, 651 n.4, 446 P.3d 646 (2019). Accordingly, on remand the trial court should determine whether the State has previously collected a DNA sample from Humphries, and shall strike the DNA collection fee unless the State demonstrates that Humphries's DNA has not been collected.

We affirm Humphries's convictions, but we remand to the sentencing court to determine whether the State has previously collected a DNA sample from Humphries.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Glasgow, J.

Cruser, J.