**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JANUARY 27, 2022

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JANUARY 27, 2022

*E. Lennon*
ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, ) | No. 99347-5 |
| Petitioner, ) | |
| v. ) | En Banc |
| ZACHARY P. BERGSTROM, ) | |
| Respondent and ) | Filed: January 27, 2022 |
| Cross-Petitioner. ) | |

WHITENER, J.—In 2017, Zachary Bergstrom was charged with possession of a controlled substance. He was later released on bail. For various reasons, among them, hospitalization, tardiness, and struggles with drug addiction and homelessness, Mr. Bergstrom missed three required court dates. Because of Mr. Bergstrom's failures to appear (FTAs), the State charged him with three counts of bail jumping. The jury acquitted Mr. Bergstrom of the underlying possession charge but convicted him of three counts of bail jumping under former RCW 9A.76.170 (2001) (the bail jumping statute).

*State v. Bergstrom (Zachary P.)*, No. 99347-5

On appeal, Mr. Bergstrom argued that (1) the to-convict jury instructions were constitutionally infirm because they omitted an essential element, that is, that he failed to appear "as required," (2) the State's evidence that Mr. Bergstrom knew of the required court dates was "equivocal" and therefore insufficient on two counts of bail jumping, and (3) defense counsel's failures to object to certain evidence and to request an affirmative defense instruction amounted to ineffective assistance of counsel. The Court of Appeals affirmed in part and reversed in part, agreeing that the to-convict jury instructions were deficient but on the alternate ground that "the to-convict instructions did not require the State to prove an element of bail jumping—that Bergstrom knowingly failed to appear as required." *State v. Bergstrom*, 15 Wn. App. 2d 92, 100, 474 P.3d 578 (2020) (published in part). The court nonetheless determined the error was harmless because "the uncontroverted evidence established that Bergstrom received notice he was required to attend court on January 12, 2018, April 18, 2018, and May 4, 2018," and he therefore knowingly failed to appear on those dates. *Id*. In the unpublished portion of its opinion, the court reversed Mr. Bergstrom's bail jumping conviction for his FTA on January 12, 2018 due to ineffective assistance of counsel.

We reverse in part because "knowingly failed to appear" was not an element of the 2001 bail jumping statute in effect at the time of Mr. Bergstrom's FTAs because the legislature amended the bail jumping statute in 2001 to expressly replace

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

this language with the broader knowledge requirement, "knowledge of the requirement of a subsequent personal appearance before any court of this state."[1] H.B. 1227, 57th Leg., Reg. Sess. (Wash. 2001). Despite omission of the phrase "as required," the to-convict jury instructions, as a whole, informed the jury of each essential element of bail jumping and were, therefore, constitutionally sound. We otherwise affirm the Court of Appeals because the evidence that Mr. Bergstrom had knowledge of the April 18, 2018 court date was sufficient to convict.[2]

This case prompts us to address the judiciary's role as a fair and impartial body and its obligation to engender confidence in our legal system. Under our Code of Judicial Conduct, judges and court officers are obligated to promote justice and uphold the rule of law.[3] It is critical that our courts be cognizant of the clarity and accessibility of court communications and orders, especially when dealing with parties experiencing trauma or who are in crisis, such as those coping with poverty, drug addiction, and homelessness.

---

[1] We take this opportunity to clarify that "knowingly failed to appear" was not an element under the bail jumping statute in effect from 2001 to 2020, thereby abrogating two of our prior opinions, *State v. Williams*, 162 Wn.2d 177, 170 P.3d 30 (2007), and *State v. Coucil*, 170 Wn.2d 704, 245 P.3d 222 (2010), to the extent they treat a knowing FTA as an essential element of bail jumping for offenses committed under the 2001 statute.

[2] As discussed below, Mr. Bergstrom conceded at oral argument that he was not renewing his sufficiency challenge on count 4 (May 4, 2018 FTA). Wash. Supreme Court oral argument, *State v. Bergstrom*, No. 99347-5 (Sept. 23, 2021), at 20 min., 29 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. Our sufficiency analysis, therefore, focuses on count 3, Mr. Bergstrom's FTA before the drug court on April 18, 2018.

[3] *See* CJC 1.2 (judges must promote public confidence in judiciary), 2.12 (judges must compel others under their supervision to also promote public confidence in judiciary).

*State v. Bergstrom (Zachary P.)*, No. 99347-5

FACTS AND PROCEDURAL HISTORY

In September 2017, Mr. Bergstrom was charged with possession of a controlled substance. Over the course of approximately five months, Mr. Bergstrom failed to appear at his three court dates on January 12, 2018, April 18, 2018, and May 4, 2018 (together the three court dates). During this time, Mr. Bergstrom struggled with drug addiction and homelessness. *See* 1 Verbatim Report of Proceedings (July 9, 2019) (VRP) at 243-48, 263.

1.      Releases from Custody and FTAs

On September 22, 2017, at Mr. Bergstrom's initial bail hearing, a judge granted bail on several conditions, including that Mr. Bergstrom appear at all court dates, maintain contact with his attorney, and abide by all court orders and conditions of supervision. Approximately two and a half weeks later, Mr. Bergstrom was released on bail. Nearly one month after his release, on November 3, 2017, Mr. Bergstrom returned to court for a pretrial conference, after which the court issued a scheduling order setting a subsequent pretrial conference for January 12, 2018 (the November scheduling order). Mr. Bergstrom failed to appear on January 12, 2018. He explained at trial that he was absent because he was in the hospital on that day. Though the precise timeline is unclear, Mr. Bergstrom stated that he voluntarily contacted his attorney and bond company a few days after he left the hospital because he "kn[e]w that [he] had missed a court date." VRP at 237-39. The bond

4

*State v. Bergstrom (Zachary P.)*, No. 99347-5

company effected a bond surrender, and Mr. Bergstrom returned to jail. Four days after this first FTA, a bench warrant issued for Mr. Bergstrom's arrest.[4]

On February 28, 2018, the trial court issued a scheduling order setting a new pretrial conference for May 4, 2018 (the February scheduling order). Mr. Bergstrom remained in custody at the Geiger Corrections Center. Approximately one month later, on April 10, 2018, Mr. Bergstrom was released by court order for a 14-day evaluation period to determine whether he would be admitted to the drug court program. According to written conditions of release, he was required to appear before the drug court at 3:00 p.m. on April 11, 2018 and April 18, 2018 (the April release order). Mr. Bergstrom failed to appear at the designated time on April 18, 2018, and a bench warrant issued for his arrest that day. Mr. Bergstrom testified that he arrived "late" to court on April 18, 2018 but that he spoke with a court employee who said the court would try to reschedule with him. VRP at 241-42. A Department of Corrections record admitted at trial corroborated his testimony, showing that a judicial assistant sent an e-mail to the drug court officer to explain that Mr. Bergstrom arrived late "and she told him to be back at 10:00 a.m." *Id*. at 208, 242. There is no further communication apparent on the record that relates to this or any rescheduled hearing. Mr. Bergstrom's case remained on the criminal docket.

---

[4] This bench warrant was quashed on January 18, 2018.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Approximately two and a half weeks after his FTA before the drug court, Mr. Bergstrom failed to appear for his pretrial conference on May 4, 2018, which had been set a full two months prior in the February scheduling order. A new bench warrant issued for his arrest that day. Mr. Bergstrom testified that he "was not aware of" this pretrial conference because, at that time, he struggled to remain in contact with his attorneys and parole officer—he was homeless, had no phone, and was using drugs. *Id.* at 244-48.

Mr. Bergstrom was arrested approximately one month later on new drug and firearm charges, none of which are relevant to the petition before this court. Because of his FTAs, the State added three counts of bail jumping to Mr. Bergstrom's charges.

### 2. Jury Trial

The State's case on the bail jumping charges relied heavily on certified court documents and testimony from court employees to establish that Mr. Bergstrom knew he was required to appear in court and that he failed to do so on the three court dates. Two deputy clerks testified that Mr. Bergstrom was on the docket but did not appear at the required times on each of the three court dates. The November scheduling order and February scheduling order were signed by both Mr. Bergstrom and his attorney and stated in all capital letters that Mr. Bergstrom was required to appear for all court dates "or a warrant for arrest may be issued." Exs. 3, 7; *see* VRP

*State v. Bergstrom (Zachary P.)*, No. 99347-5

at 169, 175. The April release order, also signed by Mr. Bergstrom and his attorney, mandated Mr. Bergstrom's presence on April 18, 2018 "to formalize his . . . participation in or to opt out of the [drug court] program." Ex. 8, at 2. This order also stated that the precise court time was "subject to change" and that "Pioneer[5] will advise you of the correct court time." *Id*. Mr. Bergstrom conceded at trial that the aforementioned orders were each signed in a space designated for his signature. VRP at 257-58.[6]

The jury members were provided the following to-convict jury instructions on each count of bail jumping:

> (1) That on or about [date],[7] the defendant failed to appear before a court;
> (2) That the defendant was charged with possession of a controlled substance, a crime under RCW 69.50.4013(1), a class C felony;
> (3) That the defendant had been [admitted to bail (or) released by court order][8] with knowledge of the requirement of a subsequent personal appearance before that court; and
> (4) That any of these acts occurred in the State of Washington.

Clerk's Papers (CP) at 148, 150, 152; VRP at 275-77. These instructions mirrored the 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* (4th

---

[5] Pioneer Center East is a drug rehabilitation center in Spokane. VRP at 245.

[6] Although Mr. Bergstrom questioned whether the signature on the November scheduling order was his, which related to his FTA on January 12, 2018, that FTA is not the subject of this appeal, and he did not contest the signatures on the other scheduling orders.

[7] Each of the three instructions specified one of the three court dates, January 12, 2018, April 18, 2018, or May 4, 2018, as applicable.

[8] Each of the three instructions employed one option or the other, as applicable to the specific count.

*State v. Bergstrom (Zachary P.)*, No. 99347-5

ed. 2016) (WPIC), and Mr. Bergstrom's defense counsel did not object to them at

trial.[9] The jury acquitted Mr. Bergstrom of the underlying drug possession charge

but found him guilty of three counts of bail jumping.

### 3.    Appeal

Division Three of the Court of Appeals held that the to-convict jury

instructions improperly relieved the State of its burden to prove that Mr. Bergstrom

"knowingly failed to appear as required" because "no element in the to-convict

instruction required the State to prove Bergstrom *knew* he was required to appear on

the dates alleged in the particular counts." *Bergstrom*, 15 Wn. App. 2d at 99. The

court declined to follow *State v. Hart*, a prior Division Two opinion, which held that

---

[9] For comparison, in 2018, the WPIC defined the crime of bail jumping as follows:

> "A person commits the crime of bail jumping when he or she [fails to appear] [or] [fails to surrender] as required after having been released by court order or admitted to bail with knowledge of the requirement [of a subsequent personal appearance before a court] [or] [to report to a correctional facility for service of sentence.]"

WPIC 120.40, at 569 (alterations in original). The WPIC provided the following to-convict instructions:

> To convict the defendant of the crime of bail jumping, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about (<u>date</u>), the defendant failed [to appear before a court] [or] [to surrender for service of sentence];
> (2) That the defendant [was being held for] [or] [was charged with] [or] [had been convicted of] [(<u>fill in crime</u>)] [a crime under RCW (<u>fill in statute</u>)] [a class A felony] [a class B or C felony] [a gross misdemeanor or misdemeanor];
> (3) That the defendant had been released by court order [or admitted to bail] with knowledge of [the requirement of a subsequent personal appearance before that court] [or] [the requirement to report to a correctional facility for service of sentence]; and
> (4) That any of these acts occurred in the [State of Washington] [City of _____] [County of _____].

WPIC 120.41, at 570 (alterations in original).

*State v. Bergstrom (Zachary P.)*, No. 99347-5

the instruction "knowledge *of the requirement* of a subsequent personal appearance before that court" satisfied the "as required" element of bail jumping. 195 Wn. App. 449, 456, 381 P.3d 142 (2016), *abrogated on other grounds by State v. Burns*, 193 Wn.2d 190, 438 P.3d 1183 (2019). The Court of Appeals reasoned that the phrase "[*a*] subsequent court appearance" could mean "'any' subsequent court appearance," which could have allowed the jury to convict Mr. Bergstrom of bail jumping for any date, regardless of whether he knew he was required to appear, so long as he knew of some subsequent court date at the time of his release. *Bergstrom*, 15 Wn. App. 2d at 99-100.

The court held that the error was nonetheless harmless in light of the State's "uncontroverted evidence" that Mr. Bergstrom actually received notice of the three court dates. *Id*. at 100. In an unpublished portion of the opinion, the court reversed Mr. Bergstrom's conviction on the first count of bail jumping due to ineffective assistance of counsel for "failing to offer a jury instruction on the affirmative defense to bail jumping" in light of Mr. Bergstrom's hospitalization on January 12, 2018. *Bergstrom*, No. 37023-2-III, slip op. (unpublished portion) at 14, https://www.courts.wa.gov/opinions/pdf/370232_pub.pdf. The court affirmed his other convictions. *Bergstrom*, 15 Wn. App. 2d at 94.

The concurrence questioned the majority's reasoning, stressing that the phrase "knowingly failed to appear as required" was a vestige of an older version of the bail

9

jumping statute and that a 2001 amendment explicitly had altered the knowledge modifier "to reflect proof of knowledge of the need to appear instead of establishing the mindset behind the failure to appear." *Id*. at 100-01 (Korsmo, J., concurring). The concurrence noted that the WPIC, the to-convict jury instructions, and *Hart* were faithful to the version of the bail jumping statute in effect in 2018, and proposed that the court "merely . . . disagree[d] about the placement of the 'knowledge' modifier." *Id*. at 101-02 (Korsmo, J., concurring).

The State now requests that this court reverse in part the Court of Appeals to the extent that it directs all courts to instruct juries on the bail jumping elements as set forth in *State v. Williams*, 162 Wn.2d 177, 170 P.3d 30 (2007).[10] Mr. Bergstrom

---

[10] We think it prudent to briefly address the unusual procedural posture of this appeal, where the State has petitioned for review of a ruling that was ostensibly in its favor. Only "aggrieved" parties may appeal under RAP 3.1, and parties generally are not considered "aggrieved" by a favorable decision. *Randy Reynolds & Assocs. v. Harmon*, 193 Wn.2d 143, 150, 437 P.3d 677 (2019); *see Paich v. N. Pac. Ry. Co.*, 88 Wash. 163, 165-66, 152 P. 719 (1915) (party not "aggrieved" because final judgment "afforded respondent all relief it asked and that could possibly have been granted to it"); *see also City of Tacoma v. Taxpayers of Tacoma*, 108 Wn.2d 679, 685, 743 P.2d 793 (1987) (party not aggrieved simply because it would have preferred court to affirm on statutory, as opposed to constitutional, grounds). However, appeals are permissible "to correct errors injuriously affecting the appellant." *Elterich v. Arndt*, 175 Wash. 562, 564, 27 P.2d 1102 (1933). Because the Court of Appeals has imposed on the State an improper burden to prove an element that did not exist in the 2001 bail jumping statute, as discussed *infra*, the State is "aggrieved" within the meaning of RAP 3.1. *Randy Reynolds & Assocs.*, 193 Wn.2d at 150 ("'[f]or a party to be aggrieved, the decision must . . . impose on a party a burden or obligation'" (first alteration in original) (quoting *In re Parentage of X.T.L.*, No. 31335-2-III, slip op. at 17 (Wash. Ct. App. Aug. 19, 2014) (unpublished), https://www.courts.wa.gov/opinions/pdf/313352.unp.pdf); *Elterich*, 175 Wash. at 563 (aggrieved party "has a substantial interest in the subject matter of the litigation"); *see also State v. A.M.R.*, 147 Wn.2d 91, 95, 51 P.3d 790 (2002) (State was aggrieved under RCW 13.04.033 by erroneous order limiting restitution to victims' out-of-pocket expenses because of its "interests in accountability and restitution in juvenile cases.").

*State v. Bergstrom (Zachary P.)*, No. 99347-5

renews his challenges that (1) omitting "as required" from the to-convict jury instructions was equivalent to omitting an essential element of bail jumping, (2) the evidence was insufficient to convict on the April 18, 2018 bail jumping charge,[11] and (3) the State did not satisfy its burden to prove that the omission of "as required" from the to-convict jury instructions was harmless beyond a reasonable doubt with respect to Mr. Bergstrom's FTA on May 4, 2018.

## ISSUES

1. Were the to-convict jury instructions for Mr. Bergstrom's bail jumping charges constitutionally deficient because they omitted the phrase "as required?"

2. Was the evidence sufficient to convict Mr. Bergstrom of bail jumping on April 18, 2018?

## ANALYSIS

I. Sufficiency of the To-Convict Jury Instructions

A. Standard of Review

This court reviews questions of statutory construction as well as the sufficiency of to-convict jury instructions de novo. *State v. Mills*, 154 Wn.2d 1, 7,

---

[11] Although initially challenged in his petition for review, Mr. Bergstrom conceded at oral argument that the evidence was sufficient to convict him of bail jumping on May 4, 2018. Wash. Supreme Court oral argument, *State v. Bergstrom*, No. 99347-5 (Sept. 23, 2021), at 20 min., 29 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

*State v. Bergstrom (Zachary P.)*, No. 99347-5

109 P.3d 415 (2005); *State v. Roggenkamp*, 153 Wn.2d 614, 621, 106 P.3d 196 (2005).

## B. Elements of the Bail Jumping Statute

The bail jumping statute has undergone three substantive amendments since its passage in 1975. The chart below illustrates the two amendments relevant to this petition with their differences underlined.

| RCW 9A.76.170 (1983 version) | RCW 9A.76.170 (2001 version) |
| --- | --- |
| "Any person having been released by court order or admitted to bail <u>with the requirement of a subsequent personal appearance</u> before any court of this state, <u>and who knowingly fails to appear as required</u> is guilty of bail jumping." | "Any person having been released by court order or admitted to bail <u>with knowledge of the requirement of a subsequent personal appearance</u> before any court of this state . . . <u>and who fails to appear . . . as required</u> is guilty of bail jumping." |

During the time period relevant to Bergstrom's FTAs, September 2017 through May 2018, the 2001 bail jumping statute applied. RCW 10.01.040 (statute in effect at time of criminal violation applies "unless a contrary intention is expressly declared in the amendatory . . . act"); *State v. Schmidt*, 143 Wn.2d 658, 673-74, 23 P.3d 462 (2001) ("it is the law in effect at the time a criminal offense is actually committed that controls disposition of the case"). A legislative report on the 2001 amendment explained that "[t]he element of knowledge in the crime is changed: instead of requiring a person to knowingly fail to appear in order to be convicted of bail jumping, the act requires the person to have knowledge of the requirement to

12

*State v. Bergstrom (Zachary P.)*, No. 99347-5

appear before a court." FINAL B. REP. ON H.B. 1227, at 2-3, 57th Leg., Reg. Sess. (Wash. 2001).

Since the 2001 amendment, this court and the Court of Appeals have supplied conflicting definitions of bail jumping elements. In two opinions, both issued after the 2001 amendment, this court articulated the elements of bail jumping to include proof that a defendant knowingly failed to appear. *State v. Coucil*, 170 Wn.2d 704, 708, 711, 245 P.3d 222 (2010) (holding penalty classification of underlying charge determines penalty classification of bail jumping offense); *Williams*, 162 Wn.2d at 184, 188 (holding classification of underlying offense is not essential element of bail jumping). In the instant case, the Court of Appeals echoed the language in *Williams*, despite the fact that *Williams* relied on an earlier bail jumping case using elements from the 1983 version of the statute. 162 Wn.2d at 183-84 (quoting *State v. Pope*, 100 Wn. App. 624, 627, 999 P.2d 51 (2000)). The court directed that all "[t]rial courts, rather than resorting to the pattern instruction that the jury may misunderstand, should instruct the jury using the elements as set forth in *Williams*." *Bergstrom*, 15 Wn. App. 2d at 100 n.1.

No binding authority has yet decided the precise issue on appeal. *See In re Stockwell*, 179 Wn.2d 588, 600, 316 P.3d 1007 (2014) ("'Where the literal words of a court opinion appear to control an issue, but where the court did not in fact address or consider the issue, the ruling is not dispositive and may be reexamined without

13

*State v. Bergstrom (Zachary P.)*, No. 99347-5

violating stare decisis in the same court.'" (quoting *ETCO, Inc. v. Dep't of Labor &*

*Indus*., 66 Wn. App. 302, 307, 831 P.2d 1133 (1992))). We find most persuasive

various cases promulgated by Division Two of the Court of Appeals, which have

directly addressed the distinct knowledge modifiers in the 1983 and 2001 versions

of the bail jumping statute and have most consistently defined bail jumping elements

that conform to the 2001 version of the statute. For example, in *State v. Carver*, the

court compared the 1983 and 2001 knowledge provisions, holding that the State

must prove the defendant "was given notice of his court date—not that he had

knowledge of this date every day thereafter." 122 Wn. App. 300, 303 & n.1, 306, 93

P.3d 947 (2004) (precluding "I forgot" as defense to bail jumping). Later, in *State v.*

*Cardwell*, the court held that "[i]n order to meet the knowledge requirement of the

[bail jumping] statute, the State is required to prove that a defendant has been given

notice of the required court dates." 155 Wn. App. 41, 47, 226 P.3d 243 (2010),

*adhered to on remand*, noted at 166 Wn. App. 1011 (2012). Other decisions after

2001 from Division One and Division Two have articulated the essential elements

of bail jumping according to the *Cardwell* formulation. *See State v. Anderson*, 3 Wn.

App. 2d 67, 69, 70, 413 P.3d 1065 (2018); *State v. Coleman*, 155 Wn. App. 951,

964, 231 P.3d 212 (2010); *State v. Downing*, 122 Wn. App. 185, 192 & n.4, 93 P.3d

900 (2004); *see also State v. Gonzalez-Lopez*, 132 Wn. App. 622, 629, 638, 132 P.3d

1128 (2006) (despite to-convict instructions at trial using "knowingly failed to

*State v. Bergstrom (Zachary P.)*, No. 99347-5

appear as required," court applied knowledge modifier to subsequent requirement to appear in its recitation of bail jumping elements).

Further, the plain text of the 2001 version of the bail jumping statute reveals a legislative intent to require proof that a defendant received notice (i.e., he had knowledge) of the requirement that he must appear in court at a later date, and not that it was a knowing FTA. *Carver*, 122 Wn. App. at 303 & n.1, 306; *see State v. Varga*, 151 Wn.2d 179, 191, 194-95, 86 P.3d 139 (2004) (legislature effectively overrules judiciary by amending statutes and applying them prospectively). The legislature said as much when the 2001 version of the bail jumping statute was passed. FINAL B. REP. ON H.B. 1227, at 2-3.

We reject the interpretation of the bail jumping elements proposed by the Court of Appeals for two reasons. First, the court proposes a literal reading of the bail jumping statute that would lead to an absurd result—that a defendant could be convicted even if he did not know he was required to appear in court on a specific date—and which, in the court's view, justifies implying the element of "knowingly failed to appear." *See Bergstrom*, 15 Wn. App. 2d at 100; *see also State v. Yishmael*, 195 Wn.2d 155, 173, 456 P.3d 1172 (2020) (courts may "supplement the statutory law to define terms or even to articulate implied elements" as necessary). To adhere to established principles of statutory interpretation, we are reluctant to accept literal readings with such "strained consequences," especially when they do not align with

*State v. Bergstrom (Zachary P.)*, No. 99347-5

the statute's purpose and plain meaning of its text. *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990). The court's interpretation denies one such purpose of the bail jumping statute, RCW 9A.04.020(1)(b), "[t]o safeguard conduct that is without culpability from condemnation as criminal." *See* RCW 9A.04.020(2) ("The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title."). Second, the court exceeds its authority by implying an element that expressly contradicts the legislature's intent to broaden the knowledge requirement by removing "knowingly failed to appear" in 2001. FINAL B. REP. ON H.B. 1227, at 2-3; *see State v. Bradshaw*, 152 Wn.2d 528, 534-35, 98 P.3d 1190 (2004) (declining to imply mens rea element found in model uniform act where legislature deleted that language in possession statute); *see also State v. Blake*, 197 Wn.2d 170, 176, 481 P.3d 521 (2021) ("As we have held for nearly 40 years, 'if the legislature had intended [a particular mens rea] to be an element of the crime . . . it would have put the requirement in the act.'" (second alteration in original) (quoting *State v. Cleppe*, 96 Wn.2d 373, 380, 635 P.2d 435 (1981))). The State cannot be required to prove elements that did not exist at the time the alleged crime was committed.

16

C.      Sufficiency of the To-Convict Jury Instructions

To satisfy due process, to-convict jury instructions must instruct the jury on every essential element of the crime. *Williams*, 162 Wn.2d at 183, 186-87; *State v. Aumick*, 126 Wn.2d 422, 429-30, 894 P.2d 1325 (1995). That does not mean, however, that to-convict jury instructions must present elements verbatim from a statute; rather, they must "allow counsel to argue their theory of the case, . . . not [be] misleading, and when read as a whole properly inform the trier of fact of the applicable law." *Anderson*, 3 Wn. App. 2d at 69-70 (quoting *State v. Knutz*, 161 Wn. App. 395, 403, 253 P.3d 437 (2011)). The to-convict jury instructions here echoed the WPIC and 2001 version of the bail jumping statute, but the instructions also, as Mr. Bergstrom points out, excluded the phrase "as required." Mr. Bergstrom considers this equivalent to omitting an essential element.[12] Mr. Bergstrom contends that this omission allowed the jury to convict based on essentially innocent conduct (i.e., an FTA without knowledge of the requirement to appear), impermissibly making bail jumping appear to be a strict liability crime.[13]

---

[12] Mr. Bergstrom states that the alleged ambiguity in the statute is exacerbated by use of the text "*a* court" instead of "*the* court." We disagree. The text "a court" mirrors the bail jumping statute and WPIC. The to-convict jury instructions provided that the jury had to find that Mr. Bergstrom had knowledge of the requirement to appear before "that court"; this element conveys that both the requirement to appear and the FTA relate to the same court.

[13] As discussed at oral argument, Mr. Bergstrom does not argue that the bail jumping statute is a strict liability crime. Wash. Supreme Court oral argument, *State v. Bergstrom*, No. 99347-5 (Sept. 23, 2021), at 29 min., 54 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

*State v. Bergstrom (Zachary P.)*, No. 99347-5

Though the Court of Appeals properly noted that the to-convict jury instructions could have been clearer, for instance, by reinserting the charged date after the third element, see *Bergstrom*, 15 Wn. App. 2d at 100 n.1, they were not deficient under the 2001 bail jumping statute.

Implicit in the phrase "failed to appear as required" is, first, the understanding that the parties—the court and Mr. Bergstrom—stipulated that Mr. Bergstrom's appearance before the court at a certain date and time was required and, second, that Mr. Bergstrom did not comply with that stipulation. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1929 (2002) (defining "require" to mean "to demand as necessary or essential (as on general principles or in order to comply with or satisfy some regulation)" and "to impose a compulsion or command upon"); *see also* BLACK'S LAW DICTIONARY 1561 (11th ed. 2019) (defining "requirement" as "something legally imposed, called for, or demanded; an imperative command"). The to-convict jury instructions plainly set forth each date upon which Mr. Bergstrom failed to appear. Specification of these dates served no purpose other than to establish that Mr. Bergstrom's presence was, in fact, required on those dates. Had the dates not been specified, then his argument would be more persuasive that such an instruction would permit conviction for an FTA on any date regardless of whether that date was stipulated on a scheduling order, release order, or other form of notice. However, the date in the to-convict jury instructions established a nexus between

18

*State v. Bergstrom (Zachary P.)*, No. 99347-5

Mr. Bergstrom's FTA before a court "as required" and his knowledge of the requirement of his appearance before that court on that required date. *See Anderson*, 3 Wn. App. 2d at 69-72; *see also Bergstrom*, 15 Wn. App. 2d at 102 (Korsmo, J., concurring).

Accordingly, the to-convict jury instructions encompassed the "as required" provision, they properly instructed the jury on every essential element of bail jumping, and were, therefore, constitutionally sound. *See Aumick*, 126 Wn.2d at 429-30. Substitution of a specific date for "as required," an arguably less informative phrase, did not prevent Mr. Bergstrom from having his day in court, *see State v. Bonner*, 53 Wn.2d 575, 587, 335 P.2d 462 (1959); *State v. Manussier*, 129 Wn.2d 652, 692, 921 P.2d 473 (1996) (Madsen, J., dissenting), nor did it suggest to the jury that bail jumping is a strict liability crime; the knowledge requirement is unaffected by specification of the date. The Court of Appeals erred in determining that "knowingly failed to appear" was an element of the bail jumping statute and in directing courts to instruct juries according to the elements set forth in *Williams*. Because there was no error in the to-convict jury instructions, this court does not reach Mr. Bergstrom's harmless error argument relating to his FTA on May 4, 2018.

*State v. Bergstrom (Zachary P.)*, No. 99347-5

II.     Sufficiency of the Evidence for FTA on April 18, 2018

A.     Standard of Review

This court reviews sufficiency of the evidence challenges to determine whether "any rational trier of fact, viewing the evidence in a light most favorable to the state, could find the essential elements of the charged crime beyond a reasonable doubt."[14] *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). The court defers to the jury on issues of "conflicting testimony[, credibility of witnesses,] and evaluating the persuasiveness of the evidence." *Id*.; *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

B.     Sufficiency of the Evidence

At the outset, we note that there are certain aspects of Mr. Bergstrom's case that prompt concern regarding the judiciary's role as a fair and impartial body and

---

[14] Though not relevant to our analysis, we note that the Court of Appeals articulated an incorrect "substantial evidence" standard of review to Mr. Bergstrom's sufficiency challenge. *See Bergstrom*, No. 37023-2-III, slip op. (unpublished portion) at 13. The proper standard is set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *State v. Vasquez*, 178 Wn.2d 1, 6, 309 P.3d 318 (2013) ("We have rejected a substantial evidence standard in determining the sufficiency of the evidence because it does not require proof beyond a reasonable doubt."); *State v. Green*, 94 Wn.2d 216, 220-21, 222, 616 P.2d 628 (1980) (plurality opinion) ("The . . . 'substantial evidence' rule of review cannot be equated with *Jackson*'s 'reasonable doubt' rule.").

20

*State v. Bergstrom (Zachary P.)*, No. 99347-5

its concomitant duty to engender confidence in our legal system. It is critical that our courts be cognizant of the hardships many people have in accessing our courts, and it is imperative that our expectations are clear in our court communications and court orders, especially when dealing with parties experiencing trauma or who are in crisis. Mr. Bergstrom's struggles with addiction and homelessness were manifest throughout this case. In fact, the trial court's judgment and sentence memorandum noted that Mr. Bergstrom "has a chemical dependency that has contributed to the offense(s)." CP at 203, 221.

Mr. Bergstrom alleges that certain ambiguities undermined the sufficiency of the evidence used to prove that he knew of the April 18, 2018 court date. Mr. Bergstrom asserts that the April release order, which set the April 18, 2018 court date, was ambiguous because of provisions that explained that his court time was "subject to change" and that "Pioneer will advise you of the correct court time." Ex. 8, at 2. This language was not "equivocal" evidence. *Cf. State v. Vasquez*, 178 Wn.2d 1, 14, 15, 309 P.3d 318 (2013) (defendant's admission to possession of forged documents was equivocal evidence of "intent to injure or defraud"). The April release order used mandatory language, namely, that Mr. Bergstrom "shall attend . . . Drug Court review *until* accepted into the program," with the caveat that the precise time of his appearance was "subject to change." Ex. 8, at 2 (emphasis added). This language conveyed that Mr. Bergstrom's acceptance into the program was

21

*State v. Bergstrom (Zachary P.)*, No. 99347-5

contingent only upon his compliance with certain conditions, including appearing on April 18, 2018. This language does not support the inferences that Mr. Bergstrom lacked the requisite knowledge that his appearance before the drug court was mandatory, or that the date of his appearance was "contingent" generally, as he suggests. *Cf. Cardwell*, 155 Wn. App. at 47 (defendant's "obligation to appear was contingent on the State's filing criminal charges" within designated time frame). Based on (1) the fact that the April release order was signed in a space designated for Mr. Bergstrom,[15] (2) the testimony by a deputy clerk that Mr. Bergstrom was on the docket for April 18, 2018, and (3) the issuance of a bench warrant on April 18, 2018, the evidence was sufficient to permit any rational jury to find that Mr. Bergstrom received notice (and thus had knowledge) of the scheduled date and time of his drug court appearance, to find that the date and time did not change, and to infer that he received no information that would excuse his appearance. *Homan*, 181 Wn.2d at 106.

---

[15] Although Mr. Bergstrom emphasized that the signature on the April release order (along with the signatures on the November scheduling order and February scheduling order) was not authenticated by any witnesses, he conceded at oral argument that he was not challenging the admissibility of the order as a certified record pursuant to RCW 5.44.010. Wash. Supreme Court oral argument, *State v. Bergstrom*, No. 99347-5 (Sept. 23, 2021), at 25 min., 46 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. This court defers to the jury regarding the weight attributable to the April release order. *See Homan*, 181 Wn.2d at 106. Necessarily, Mr. Bergstrom admits that the April release order was signed in a space designated for him. *Id*. Any rational jury could infer that the signature therefore belonged to Mr. Bergstrom and that he therefore knew of the court dates specified therein. *Id*.; *Longshore*, 141 Wn.2d at 420-21.

22

*State v. Bergstrom (Zachary P.)*, No. 99347-5

Our courts should acknowledge that keeping track of multiple court dates and times, especially when they involve two different court dockets, would be difficult enough for any sober, housed, and connected individual. Mr. Bergstrom, by his own admission, met none of those descriptions at the time of his FTAs. Moreover, he missed the April 18, 2018 court date by arriving a matter of hours, perhaps just minutes late. *See* VRP at 208, 241-42. Deputy clerk witnesses testified that "[i]t was common" for people to arrive late and that "[t]ypically a [new] scheduling order would be signed, and the order . . . authorizing [a] bench warrant would be shredded, disposed of." *Id*. at 180, 192. Despite the judicial assistant's message regarding Mr. Bergstrom's late arrival on April 18, 2018, it seems Mr. Bergstrom was the victim of a miscommunication between court employees and, so, did not receive the benefit of leniency normally accorded late arrivals.

Further, it would not necessarily be clear to an average person that they still would be required to appear in criminal court (on a date scheduled nearly two months prior) when they had been assured that the drug court would try to reschedule with them. *See id*. at 241-42.[16]

---

[16] Although not ultimately relevant to the sufficiency issue, Mr. Bergstrom was penalized again on May 4, 2018 for apparently failing to keep track of his upcoming court dates, all while he was homeless, isolated, and struggling with drug addiction. VRP at 244-48.

*State v. Bergstrom (Zachary P.)*, No. 99347-5

We have recognized "the disproportionate effect that criminalizing FTAs has on persons of lower socioeconomic classes."[17] *State v. Slater*, 197 Wn.2d 660, 674, 486 P.3d 873 (2021). Likewise, we have noted that the legislature, in its 2020 amendment to the bail jumping statute, began to move away from criminalization by allowing timely motions to quash to effectively nullify criminal liability for an FTA. *Id*.; *see* RCW 9A.76.170(1)(b)(ii)(A). Mr. Bergstrom did not have the benefit of this amended language, though it likely could have been a viable option for at least one (if not all three) of his FTAs. The bail jumping statute may yet be wielded to punish people who miss court not because of willful disobedience of a court order but by reasons of indigence, struggles with mental health, homelessness, and drug addiction. *Slater*, 197 Wn.2d at 674-76.

Though it ultimately does not change our analysis, we acknowledge that the "subject to change" and "Pioneer" language in the April release order could have been confusing. Our courts are capable of implementing simple, yet effective measures to help avert FTAs, such as featuring more prominently all required court dates, making explicitly clear that said dates are mandatory unless defendants receive notice to the contrary, and, in the event of a temporary suspension of proceedings on one docket (or even the possible appearance of a suspension), issuing

---

[17] Though Mr. Bergstrom notes in his supplemental briefing that the bail jumping statute has a disproportionate impact on indigent people and people of color, he does not argue that the statute is unconstitutional on its face or as applied to him.

24

subsequent notices to confirm that previously scheduled court dates are still in effect.

*See, e.g.*, *Crime Lab Finds Behavioral Nudges Improve Court Attendance in NYC*, UCHICAGO NEWS (Jan. 26, 2018), https://news.uchicago.edu/story/crime-lab-finds-behavioral-nudges-improve-court-attendance-nyc (study in New York City showed redesigning court summonses to emphasize court date, time, and location, as well as sending text message reminders, decreased FTA rates by 36 percent) [https://perma.cc/B4SH-L6BY]. Our courts should be encouraged to help avert court absences and these attendant financial and emotional costs. *See* Aleksandrea E. Johnson, *Decriminalizing Non-Appearance in Washington State*, 18 SEATTLE J. FOR SOC. JUST. 433, 468 (2018) (discussing toll of incarceration, warrant enforcement, fines, and increased hearings for defendants with FTAs).

Mr. Bergstrom's arguments regarding the ambiguity of the "subject to change" and Pioneer provisions, the confusing nature of the drug court proceedings, and his struggles to maintain contact with his attorney, while sympathetic, do not undercut the State's evidence that Mr. Bergstrom knew of each of the three court dates. Mr. Bergstrom did not argue that the signature on the April release order was not his, nor did he argue that the order failed to provide notice of the April 18, 2018 court date. We affirm the court's ruling on the sufficiency of the evidence.

*State v. Bergstrom (Zachary P.)*, No. 99347-5

CONCLUSION

We affirm the Court of Appeals in part and reverse in part. We affirm that the evidence was sufficient to convict Mr. Bergstrom of bail jumping on April 18, 2018. We reverse the Court of Appeals' holding that the to-convict jury instructions were constitutionally deficient for failing to require proof of a knowing FTA. The legislature expressly removed "knowingly failed to appear" as a bail jumping element in 2001. Because specification of the dates in the to-convict jury instructions established a nexus between Mr. Bergstrom's knowledge of the required court dates and his failure to appear "as required" on those dates, we hold that the to-convict instructions were constitutionally sound and did not violate Mr. Bergstrom's due process rights. Courts are hereby instructed to disregard the directive to include "knowingly failed to appear" in to-convict jury instructions for offenses falling under former RCW 9A.76.170 (2001). Because there was no error in the to-convict instructions, we do not address harmless error.

*State v. Bergstrom (Zachary P.)*, No. 99347-5

Whitener, J.

WE CONCUR.

González, C.J.

Johnson, J. - RESULT ONLY

Madsen, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

*State v. Bergstrom (Zachary P.)*, No. 99347-5
(Gordon McCloud, J., concurring)

No. 99347-5

GORDON McCLOUD, J. (concurring)—I fully agree with the majority's

resolution of the issues presented. I write separately only because I disagree with

its discussion of whether these issues are properly before this court.

The majority asserts that the State was an "aggrieved party" and that we can

therefore reach the issues that it raised. Majority at 10 n.10. I disagree that the

State is an "aggrieved party" on the claims for which it sought review. But we

must address the State's arguments because they are certainly responsive to

Zachary Bergstrom's "Answer to Petition for Review and Cross-Petition" (Cross-

Petition) (even though the State's arguments were filed first).

I.      The State was not an "aggrieved party" as to the issues for which it
        sought review under RAP 3.1

The Rules of Appellate Procedure state that "[o]nly an aggrieved party may

seek review by the appellate court." RAP 3.1 (emphasis added).

That rule does not define "aggrieved party." But this court has long held that

a party is "aggrieved" when the decision adversely affects "'that party's property

or pecuniary rights, or a personal right, or impose on a party a burden or

obligation.'" *Randy Reynolds & Assocs. v. Harmon*, 193 Wn.2d 143, 150, 437 P.3d

677 (2019) (quoting *In re Parentage of X.T.L.*, No. 31335-2-III, slip op. at 17

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Bergstrom (Zachary P.)*, No. 99347-5
(Gordon McCloud, J., concurring)

(Wash. Ct. App. Aug. 19, 2014) (unpublished),

https://www.courts.wa.gov/opinions/pdf/313352.unp.pdf); *State ex rel. Simeon v.*

*Superior Court*, 20 Wn.2d 88, 90, 145 P.2d 1017 (1944).

It is not enough for a party to be "hurt in his feelings" or to be disappointed

in the judgment. *Simeon*, 20 Wn.2d at 90. Most notably for this case, we have

clearly stated that "[a] party is not aggrieved by a favorable decision and cannot

properly appeal from such a decision." *Randy Reynolds*, 193 Wn.2d at 150 (citing

*Paich v. N. Pac. Ry. Co.*, 88 Wash. 163, 165-66, 152 P. 719 (1915)); *State v.*

*Taylor*, 150 Wn.2d 599, 603, 80 P.3d 605 (2003). And just as critically, we have

always held that a party is not "aggrieved" merely because that party disagrees

with the reasoning the court used to come to its decision. *City of Tacoma v.*

*Taxpayers of Tacoma*, 108 Wn.2d 679, 685, 743 P.2d 793 (1987) (on appeal party

asked court to affirm on statutory grounds not on the constitutional grounds that

the trial court did—party was not "aggrieved").

I believe that the majority's footnote 10 departs from these rules. The

majority states that "appeals are permissible 'to correct errors injuriously affecting

the appellant.'" Majority at 10 n.10 (quoting *Elterich v. Arndt*, 175 Wash. 562,

564, 27 P.2d 1102 (1933)). The majority reasons that the State was aggrieved in

this case (on the issues on which it sought review) and the State therefore had the

2

*State v. Bergstrom (Zachary P.)*, No. 99347-5
(Gordon McCloud, J., concurring)

right to seek review on those issues because the Court of Appeals "imposed on the

State an improper burden to prove an element that did not exist in the 2001 bail

jumping statute." *Id*.; former RCW 9A.76.170(1) (2001). In other words, the

majority concludes that the injury to the State was the way that the Court of

Appeals interpreted the 2001 bail jumping statute. *See State v. Bergstrom*, 15 Wn.

App. 2d 92, 96-100, 474 P.3d 578 (2020) (published in part).

But the appellate court's discussion of the bail jumping statute was part of an

issue on which the State prevailed. And under our controlling case law, a

prevailing party does not have the right to appeal simply because it dislikes the

way that a court reached its conclusion. *Taxpayers*, 108 Wn.2d at 685.

To be sure, the majority is correct that the procedural posture of this case is

complicated. Majority at 10 n.10. But as I read the Court of Appeals' decision, that

court determined that the jury instructions were incorrect but that the error was

harmless—so that court ultimately upheld Bergstrom's convictions.[1] *Bergstrom*, 15

Wn. App. 2d at 99-100. That means that the State prevailed in the Court of

---

[1] In the unpublished portion of its decision, the Court of Appeals reversed one of Bergstrom's convictions based on ineffective assistance of counsel. *Bergstrom*, No. 37032-2-III, slip op. (unpublished portion) at 13-14, https://www.courts.wa.gov/opinions/pdf/370232_pub.pdf. But the State did not seek review of that decision. Pet. for Review at 1.

3

*State v. Bergstrom (Zachary P.)*, No. 99347-5
(Gordon McCloud, J., concurring)

Appeals on all counts which were affirmed but just did not like the route the court

took—harmless error—to reach that decision.

And at the risk of being repetitive, a party is not aggrieved by a favorable

decision or because of disagreement with the reasoning of the court. *Randy*

*Reynolds*, 193 Wn.2d at 150; *Taxpayers*, 108 Wn.2d at 685. These are not the kind

of pecuniary, personal, or property rights that amount to the State being

"aggrieved." *Randy Reynolds*, 193 Wn.2d at 150; *Elterich*, 175 Wash. at 564 ("The

damage or grievance which entitled a party to a writ of error or an appeal, within

this rule, must be a direct and positive one, effected by the judgment concluding

and acting upon his rights; and such damage must be by the record, and not in

consequence of it.").

The majority's interpretation of RAP 3.1 therefore expands the rule beyond

its intended scope and far beyond our prior precedent. *E.g.*, *Randy Reynolds*, 193

Wn.2d at 151 ("A party is not aggrieved by a favorable decision and cannot

properly appeal from it. . . . Inconvenience alone is not sufficient under RAP 3.1."

(citing *Paich*, 88 Wash. at 165-66; *Elterich*, 175 Wash. at 563-64)). I respectfully

disagree with that approach.

4

*State v. Bergstrom (Zachary P.)*, No. 99347-5
(Gordon McCloud, J., concurring)

II.     Bergstrom was an "aggrieved party," and the issues that the State raised should be addressed as responses to the issues presented in Bergstrom's cross petition

While the State was not an aggrieved party (within the meaning of RAP 3.1) as to the claims on which it sought review, Bergstrom certainly was: the Court of Appeals ruled that the jury instruction was deficient, but it nevertheless affirmed two of his bail jumping convictions due to harmless error. *Bergstrom*, 15 Wn. App. 2d at 100. This is clearly the kind of unfavorable decision that causes a party to be "aggrieved"—Bergstrom's property, pecuniary, and personal rights are impacted by this adverse decision. *Randy Reynolds*, 193 Wn.2d at 150.  In other words, Bergstrom lost.

But after the State filed its petition for review in this court, Bergstrom filed a cross petition. His cross petition urged this court to overturn the Court of Appeals' holdings that harmless error saved the convictions on counts III and IV and that sufficient evidence supported the conviction on count III. Cross-Pet. at 4. Bergstrom did not address whether the State was an aggrieved party (and of course, neither did the State).  We then granted review of both the petition and the cross petition, without mentioning the potential RAP 3.1 issue.

The RAPs, however, compel us to pay attention to that detail. My review of those rules convinces me that the State did not have the right to file its petition for

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

review; but the State clearly has the right to respond to the issues presented by Bergstrom, the aggrieved party. RAP 13.4(d) (detailing procedures for answers and replies to petitions).

As discussed below, the issues argued by the State can reasonably be interpreted as a response to Bergstrom's harmless error argument, even though the State's arguments were filed first. I therefore join the majority in concluding that we should address those issues.

But we should address them under RAP 13.4(d). I do not think we should expand the definition of "aggrieved" to do so.

### A. *Bergstrom sought review of both a harmless error issue and a sufficiency of evidence issue*

The first issue that Bergstrom presented was whether the State had shown that the error in the "to convict" instructions on bail jumping was harmless beyond a reasonable doubt on counts III and IV.[2] Cross-Pet. at 1. As the majority explains, the Court of Appeals held that that jury instruction violated due process because it relieved the State of its burden to prove that "'Bergstrom *knew* he was required to

---

[2] The specific issue was framed in Bergstrom's cross petition: "Constitutional error requires reversal unless the state can prove harmlessness beyond a reasonable doubt. Does the giving of a to-convict instruction relieving the state of its Due Process burden to prove each element of Bail Jumping beyond a reasonable doubt require reversal of Mr. Bergstrom's convictions for Counts III and IV when the evidence on the relevant issue was far from uncontroverted at trial?" Cross-Pet. at 1.

*State v. Bergstrom (Zachary P.)*, No. 99347-5
(Gordon McCloud, J., concurring)

appear on the dates alleged in the particular counts.'" Majority at 8 (quoting

*Bergstrom*, 15 Wn. App. 2d at 99). However, the court went on to affirm counts III

and IV of Bergstrom's conviction because the convictions were supported by

"uncontroverted evidence" that Bergstrom *did* have knowledge of the specific

court dates. *Id*. at 100. Bergstrom argued that the "[f]ailure to instruct the jury

regarding a necessary element of an offense is not harmless error unless the court

is able to conclude that the erroneous instruction 'in no way affected the outcome

of the case'" and that the appellate court erred in drawing that conclusion in this

case. Cross-Pet. at 6 (quoting *State v. Smith*, 131 Wn.2d 258, 264, 930 P.2d 917

(1997)).

The second issue that Bergstrom presented was insufficiency of the evidence

on count III.[3] *Id*. at 12. Bergstrom argued that the evidence did not support a

finding that Bergstrom was really required to appear on the court date at issue. *Id*.

at 14-15.

---

[3] The specific issue was framed in Bergstrom's cross petition: "In order to convict for bail jumping, the state must prove beyond a reasonable doubt that the accused was given notice of a required court date and later failed to appear on that date. Did the state present insufficient evidence to convict Mr. Bergstrom of Count III when the evidence showed only that a tentative hearing date had been set and that he would be advised of 'the correct court time' later?" Cross-Pet. at 1.

*State v. Bergstrom (Zachary P.)*, No. 99347-5
(Gordon McCloud, J., concurring)

        B. *The State presented two issues related to how the Court of Appeals interpreted the jury instructions—these issues relate to Bergstrom's harmless error argument*

The first issue presented in the State's petition for review was that the Court of Appeals' decision conflicted with a decision of Division Two of the Court of Appeals: *State v. Hart*.[4] Pet. for Review at 4. The State explained that Division Two held that the bail jumping jury instruction *did not* need to include "as required" and that the language in the Washington Pattern Jury Instructions: Criminal (WPIC)[5] sufficed. *Id*. In contrast, Division Three in Bergstrom's case held that the WPIC *did* need to include that language—and that the failure to include it relieved the State of the burden of proving that the defendant had knowledge of the next specific required court date, not just knowledge of "any" subsequent court appearance. *Id*. at 5.

---

[4] 195 Wn. App. 449, 381 P.3d 142 (2016), *abrogated on other grounds by State v. Burns*, 193 Wn.2d 190, 438 P.3d 1183 (2019).  The specific issue was framed in the State's petition: "Is review appropriate under RAP 13.4(b)(2) where the *Bergstrom* decision conflicts with a published decision of another division of the Court of Appeals?" Pet. for Review at 1.

[5] 11A WASHINGTON PRACTICE:  PATTERN JURY INSTRUCTIONS: CRIMINAL 120.41, at 570 (4th ed. 2016).

8

*State v. Bergstrom (Zachary P.)*, No. 99347-5
(Gordon McCloud, J., concurring)

The State's second issue is essentially an extension of the first in that it argues that the split in the two divisions of the Court of Appeals creates a clear need for statutory interpretation and therefore this case is of substantial public importance.[6] *Id*. at 6; RAP 13.4(b)(4) (a substantial public interest is a consideration that weighs in favor of this court accepting review). The State thus petitioned for review of the requirements of the bail jumping jury instructions, and ultimately, the State argues that we should endorse Division Two's interpretation of those requirements over Division Three's. *Id*. at 9.

I read those arguments—which admittedly were made in a petition for review that preceded the cross petition—as nevertheless responsive to Bergstrom's harmless error arguments. The Court of Appeals held that the jury instructions were deficient but that Bergstrom's convictions on counts III and IV survived because the error was harmless. Bergstrom argued that the error was not harmless. The State essentially argues that no harmless error analysis is necessary at all because the jury instructions were correct. The State's argument is a logical response to Bergstrom's harmless error claim.

---

[6] The specific issue was framed in the State's petition: "Is review appropriate under RAP 13.4(b)(4) where the decision below involves a matter of statutory interpretation and the manner in which Washington trial courts should instruct juries on the elements of bail jumping, both issues of substantial public importance?" Pet. for Review at 1.

9

*State v. Bergstrom (Zachary P.)*, No. 99347-5
(Gordon McCloud, J., concurring)

For that reason—and that reason alone—this court can address the issues raised in the State's petition for review.

III.    Conclusion

I agree with the majority's reasoning and conclusion on the merits of this case.

I disagree, however, with its expansion of RAP 3.1. The State was not an aggrieved party, within the meaning of that rule, on the claims for which it sought review. But Bergstrom was. And Bergstrom raised issues in his cross petition to which the State's arguments (in its petition for review) respond. The issues raised by the State are therefore properly considered by this court under RAP 13.4.

I therefore respectfully concur in all portions of the majority's opinion, with the exception of footnote 10.

_____
            Gordon McCloud, J.

_____
            Stephens, J.

10